NO. 12-01-00045-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


WOMCO, INC., W.O. MARQUESS, C.L.
§
 APPEAL FROM THE 249TH

HALL, DORIS HALL, LORI CLAXTON,

DOUGLAS WAYNE HALL, NE-TEX AG

TRANSPORTATION COMPANY, INC.

AND MILLER GROVE FARM SUPPLY, INC., 

APPELLANTS


V.
§
 JUDICIAL DISTRICT COURT OF


NAVISTAR INTERNATIONAL

CORPORATION, PRICE INTERNATIONAL,

INC. AND MAHANEY INTERNATIONAL,

INC.,

APPELLEES
§
 VAN ZANDT COUNTY, TEXAS

 

OPINION ON APPELLEES' MOTION TO CLARIFY


 On May 22, 2002, we delivered our opinion in this case in which we affirmed the trial court's
order granting summary judgment as to some of Appellants' claims and reversing and remanding the
trial court's order as to certain other claims. On June 10, 2002, Appellees requested that we clarify our
original opinion to further delineate those claims remanded to the trial court for further proceedings.
Appellees' motion is hereby granted, our opinion dated May 22, 2002 is withdrawn, and the following
opinion is substituted.

 Appellants, Womco, Inc.("Womco"), W.O. Marquess ("Marquess"), C.L. Hall, Doris Hall, Lori
Claxton, Douglas Wayne Hall, NE-TEX AG Transportation Company, Inc. and Miller Grove Farm
Supply, Inc., appeal the trial court's order granting summary judgment in favor of Appellees, Navistar
International Corporation ("Navistar"), Price International, Inc. ("Price") and Mahaney International,
Inc. ("Mahaney"). (1) Appellants raise eight issues on appeal. We affirm in part, and reverse and remand
in part.


Background

 In 1993, the Womco Appellants purchased thirty 1993 International model 9300 tractor trucks
manufactured by Navistar through Price, a dealer. Also, in 1993, the Hall Appellants purchased
sixteen 1994 International model 9300 tractor trucks also manufactured by Navistar through Mahaney,
another dealer. Almost immediately after the trucks were put into service, Appellants each had
problems with their respective trucks' engines overheating. As the problems occurred, Appellants took
their trucks, which were still covered under warranty, to their respective dealerships for diagnoses and
repairs related to the overheating problem. Although repeated attempts were made, the dealership's
mechanics were unable to correct the problem. 

 In June 1995, Marquess, the president of Womco, had one of the trucks inspected by an
independent source, Rodieck Welding & Radiator Service ("Rodieck"). Rodieck found nothing wrong
with the truck's radiator, but replaced the core of the radiator to be certain. Rodieck also informed
Marquess that the truck's radiator appeared to be unusually small. Despite Rodieck's efforts, the
overheating problem in the Womco Appellants' trucks continued. Soon thereafter, Marquess contacted
Price and spoke to Les Miller ("Miller"), informing him that he wanted to install larger radiators in his
trucks. Miller responded that Price did not make a larger radiator for that particular truck and further,
that the hood of the truck would not accommodate a larger radiator. Following this conversation,
Marques had an audit conducted of the cooling system of one of the trucks in July 1995 by the Tyler
Truck Center, which revealed that the trucks were overheating due to insufficient radiator capacity.

 The Womco Appellants filed suit on April 23, 1997. The Hall Appellants joined the suit on
or about May 22, 1997 after learning of the results of the audit. In January 2000, Appellees filed a
motion for summary judgment based on their affirmative defenses of limitations, accord and
satisfaction, disclaimer of warranty and the economic loss rule. Appellants responded. The motion
was set for oral hearing. On the day of the hearing on Appellees' motion for summary judgment,
Appellees filed and served Appellants with their motion to strike the affidavit of Marques. Appellees
raised the motion to strike during the hearing. At the conclusion of the hearing, the trial judge stated
that he would rule on the motions in 21 days. The trial court granted Appellees' motion to strike and
motion for summary judgment in November 2000.


Standard of Review

 In reviewing a 166a(c) motion for summary judgment, we must apply the standards established
in Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985), which are:


 1. The movant for summary judgment has the burden of showing that there is no genuine issue of
material fact and that it is entitled to judgment as a matter of law;

 2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence
favorable to the non-movant will be taken as true;

 3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its
favor.



See Nixon, 690 S.W.2d at 548-49. For a party to prevail on a motion for summary judgment, he must
conclusively establish the absence of any genuine question of material fact and that he is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c). A movant must either negate at least one
essential element of the non-movant's cause of action, or prove all essential elements of an affirmative
defense. See Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex.1995); see also 
MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex.1986). Since the burden of proof is on the movant, and
all doubts about the existence of a genuine issue of a material fact are resolved against the movant, we
must view the evidence and its reasonable inferences in the light most favorable to the non-movant. 
See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex.
1965). We are not required to ascertain the credibility of affiants or to determine the weight of
evidence in the affidavits, depositions, exhibits and other summary judgment proof. See Gulbenkian
v. Penn, 252 S.W.2d 929, 932 (Tex. 1952). The only question is whether or not an issue of material
fact is presented. See Tex. R. Civ. P. 166a(c).

 Once the movant has established a right to summary judgment, the non-movant has the burden
to respond to the motion for summary judgment and present to the trial court any issues that would
preclude summary judgment. See, e.g., City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671,
678-79 (Tex. 1979). All theories in support of or in opposition to a motion for summary judgment
must be presented in writing to the trial court. See Tex. R. Civ. P. 166a(c).


The Discovery Rule

 Twenty-seven of the thirty trucks purchased by the Womco Appellants and ten of the sixteen
trucks purchased by the Hall Appellants were delivered more than four years prior to the filing of the
instant lawsuit. Appellees contend that any cause of action concerning these thirty-seven trucks is
barred by limitations. In their fifth issue, Appellants contend that the discovery rule operates to toll
the running of limitations until they discovered that the radiator was the cause of overheating. 
Appellees contend that the discovery rule does not apply to Appellants' claims, but that even if it does,
it runs from the time Appellants discovered that the trucks were overheating.

 The primary purpose of statutes of limitations is to compel the exercise of a right of action
within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses
are available and the evidence is fresh in their minds. Willis v. Maverick, 760 S.W.2d 642, 644 (Tex.
1988); see also Wagner & Brown, Ltd. v. Horwood, 58 S.W.3d 732, 734 (Tex. 2001), citing
Computer Assocs. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996); S.V. v. R.V., 933
S.W.2d 1, 3 (Tex. 1996). It is in society's best interest to grant repose by requiring that disputes be
settled or barred within a reasonable time. Horwood, 58 S.W.3d at 734. Generally, a cause of action
accrues when a wrongful act causes a legal injury, even if the fact of injury is not discovered until later,
and even if all resulting damages have not yet occurred. See S.V., 933 S.W.2d at 3; see also Li v.
University of Tex. Health Sci. Center at Houston, 984 S.W.2d 647, 651 (Tex. App.- Houston [14th
Dist.] 1998, pet. denied). The discovery rule is the legal principle which, when applicable, provides
that limitations run from the date the plaintiff discovers or should have discovered, in the exercise of
reasonable care and diligence, the nature of the injury. See Childs v. Haussecker, 974 S.W.2d 31, 40
(Tex. 1998); Willis, 760 S.W.2d at 644. Discovering the "nature of the injury" requires knowledge of
the wrongful act and the resulting injury. See Childs, 974 S.W.2d at 40.

 Appellants argue that the discovery rule tolls limitations until they discovered the specific cause
of the overheating - namely, as they allege, that the radiator was too small to properly cool the trucks. 
We disagree. In Bayou Bend Towers Council of Co-Owners v. Manhattan Constr. Co., the
Fourteenth Court of Appeals held that the discovery of an injury and its general cause, as opposed to
the exact cause, is sufficient to commence the running of the limitations period. 866 S.W.2d 740, 742
(Tex. App.-Houston [14th Dist.] 1993, writ denied). The court of appeals' holding comports with the
Texas Supreme Court's opinion in Childs, in which the court stated, "when the discovery rule applies,
accrual is tolled until a claimant discovers or in the exercise of reasonable diligence should have
discovered the injury and that it was likely caused by the wrongful acts of another." Id. at 40; see also
KPMG Peat Marwick, 988 S.W.2d at 749 (statute tolls until plaintiff knew or should have known of
the wrongfully caused injury); Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 224 (Tex. 1999) (issue
characterized as whether plaintiff knew or should have known, through the exercise of reasonable
diligence, that the injury was likely work-related); Moreno v. Sterling Drug, Inc., 787 S.W.2d 348,
351 (Tex. 1990) (discovery rule tolls the running of the limitations period until the plaintiff discovers,
or in the exercise of reasonable diligence should have discovered, the nature of the injury). Thus, if
the discovery rule applies to a case such as this one, it would begin to run from the point where
Appellants discovered, or in the exercise of reasonable care and diligence should have discovered, the
"nature of the injury" as that term has been defined by the Texas Supreme Court. See La Gloria Oil
and Gas Co. v. Carboline Co., 12-00-00032-CV, 2001 WL 1654936 (Tex. App.-Tyler December 21,
2001), citing Childs, 974 S.W.2d at 40.

 Even assuming arguendo that the discovery rule does apply, Appellants' cause of action would
still be barred by limitations. Appellants analogize their case to medical malpractice cases, in which
a person could not have been expected to know that his symptoms were caused by the wrongful
conduct of his treating physician. But as Appellees declare with deft simplicity in their brief, "a [truck]
is not a person." That is to say, a truck is manufactured to function properly. Thus, when a truck, upon
being put into use, malfunctions almost immediately, it follows that the problem is caused by the
wrongful conduct, be it design, manufacture or otherwise, of another. On the other hand, when a
person gets sick, it does not necessarily follow that the ailment is the cause of the wrongful conduct
of another as the illness could be naturally occurring. In the instant case, it is undisputed that the trucks
began overheating almost immediately after being put into service. Given the immediacy of the
overheating and the noted distinction between a human being and a piece of machinery, we conclude
that Appellants discovered, or, in the exercise of reasonable care and diligence, should have discovered
that the overheating problem was caused by the wrongful conduct of another upon its first occurrence. 
Indeed, it is undisputed that Appellants sought to have their trucks repaired under the warranty, which
necessarily implies that they knew that the problem was caused by the wrongful conduct of another. 
Thus, we conclude that, assuming arguendo that the discovery rule applies, Appellants claims as to
thirty-seven trucks are barred by limitations because the undisputed facts indicate that Appellants either
discovered, or in the exercise of reasonable care and diligence, should have discovered the "nature of
their injury" more than four years prior to the date they filed suit. Appellants fifth issue is overruled. (2)


Disclaimer of Warranty

 It is undisputed that Appellants' breach of implied warranty claims as to nine trucks are not
barred by limitations. (3) However, in their sixth issue, Appellees contend that such implied warranties
were disclaimed. The Texas Uniform Commercial Code allows sellers to disclaim both the implied
warranty of merchantability as well as the implied warranty of fitness for particular purpose. See Tex.
Bus. & Comm. Code Ann. § 2.316(b) (Vernon 1994); Southwestern Bell Tel. Co. v. FDP Corp., 811
S.W.2d 572, 577 (Tex. 1991). In order to disclaim an implied warranty of merchantability in a sales
transaction, the disclaimer must mention the word "merchantability." The disclaimer may be oral or
written, but if in writing, the disclaimer must be conspicuous. See La Bella v. Charlie Thomas, Inc.,
942 S.W.2d 127, 131-32 (Tex. App.-Amarillo 1997, writ denied); Tex. Bus. & Comm. Code §
2.316(b). To disclaim an implied warranty of fitness for a particular purpose, the disclaimer must be
in writing and must be conspicuous. See Tex. Bus. & Comm. Code §2.316(b); W.R. Weaver Co. v.
Burroughs Corp., 580 S.W.2d 76, 81 (Tex. App.-El Paso 1979, writ ref'd n.r.e.). Whether a particular
disclaimer is conspicuous is a question of law to be determined by the court. See Cate v. Dover Corp.,
790 S.W.2d 559, 560 (Tex. 1990). A term or clause is conspicuous if it is written so that a reasonable
person against whom it is to operate ought to have noticed it. See Tex. Bus. & Comm. Code Ann. §
1.201(10) (Vernon Supp. 2002); W.R. Weaver Co., 580 S.W.2d at 81. Language is "conspicuous" if
it is in larger type or other contrasting font or color. Id. Conspicuousness is not required if the buyer
has actual knowledge of the disclaimer. See Cate, 790 S.W.2d at 561-62. (4)

 Appellants, citing Texas Business and Commerce Code, section 2.316(a), argue that Appellees
are also required to prove the reasonableness of the disclaimers at issue. However, section 2.316(a)
concerns the disclaimer of express warranties. In the instant case, Appellants have only pleaded that
Appellees breached implied warranties. Thus, section 2.316(a) and its requirement of reasonableness 
are inapplicable.

 Further, Appellants argue that Appellees were required to offer proof of the context of the
purported disclaimers, contending that in order for a disclaimer of an implied warranty to be effective,
the plaintiffs must have had an opportunity to examine it prior to consummation of the contract for
sale. See Klo-Zik Co. v. General Motors Corp., 677 F.Supp. 499, 508 (E.D. Tex. 1987). In Klo-Zik
Co., the court, in reaching its conclusion, relied on Mercedes Benz of N. Am., Inc. v. Dickenson, 720
S.W.2d 844, 852 (Tex. App.-Fort Worth 1986, no writ). In Dickenson, the court held that a disclaimer
of an express warranty was ineffective where the buyer was not given the opportunity to read the
warranty or warranties made until after the contract is signed. Id. Although the instant case concerns
a converse situation to Dickenson, the rationale applied by the Dickenson court is helpful. One of the
underlying purposes of Texas Business and Commerce Code section 2.316 is to protect a buyer from
surprise by permitting the exclusion of implied warranties. See Tex. Bus. & Comm. Code § 2.316,
comment 1 (Vernon 1994). We fail to see how section 2.316 can fulfill such a purpose unless a
disclaimer is required to be communicated to the buyer before the contract of sale has been completed,
unless the buyer afterward agrees to the disclaimer as a modification of the contract. See Weintraub,
"Disclaimer of Warranties and Limitation of Damages for Breach of Warranty Under the UCC," 53
Tex. L. Rev. 60, 69 (1975), citing Dessert Seed Co. v. Drew Farms Supply, Inc., 248 Ark. 858, 454
S.W.2d 307 (1970); Dougall v. Brown Bay Boat Works & Sales, Inc., 287 Minn. 290, 178 N.W.2d
217 (1970). We adopt the rationale espoused in Dickenson and the holding set forth in Klo-Zik Co.,
and likewise hold that in order to be effective, a disclaimer of either an express or an implied warranty
is required to be communicated, in the manner described in section 2.316(b), to the buyer before the
contract of sale has been completed.

 In support of their motion for summary judgment, Appellees offered six disclaimers, all of
which were deposition exhibits. None of these six disclaimers is probative as to the issue of whether
the disclaimer was communicated prior to the completion of the contract of sale. Appellees also
offered the deposition testimony of Marquess, C.L. Hall, Douglas Hall and Lori Parham. In each
deposition transcript, the witness testified that he or she had received the paperwork containing the
corresponding disclaimer with delivery of the trucks. However, no evidence concerning the disclaimer
issue raised by Appellees in their motion for summary judgment demonstrates that the disclaimer was
communicated to Appellants prior to their respective completions of the contract for sale. Therefore,
we hold that since Appellant failed to conclusively prove that they were entitled to judgment as a
matter of law on the disclaimer issue, summary judgment was not appropriate on that issue. 
Appellants' sixth issue is sustained. (5)


Accord and Satisfaction

 In their seventh issue, Appellants argue that the trial court erred in granting summary judgment
based on Appellees' affirmative defense of accord and satisfaction. Accord and satisfaction is a
defense to a breach of warranty claim. See Jenkins v. Steakley Bros. Chevrolet Co., 712 S.W.2d 587,
590 (Tex. App.-Waco 1986, no writ). Accord and satisfaction, as a defense to a claim based upon a
contract, exists when the parties have entered into a new contract, express or implied, which discharges
the obligations under the original contract in a manner otherwise than as originally agreed. See Harris
v. Rowe, 593 S.W.2d 303, 306 (Tex. 1979). In other words, the person with the right of action accepts
some performance in satisfaction of the right of action. See Priem v. Shires, 697 S.W.2d 860, 863 n
3 (Tex. App.-Austin 1985, no writ). The new agreement need not state that it is intended to be an
accord and satisfaction. See Jenkins, 712 S.W.2d at 590. Rather, we may look to the circumstances
surrounding the execution of the new agreement to determine if there has been an agreement to
discharge the original obligation. Id., citing Harris, 593 S.W.2d at 306. 

 In the case at hand, Appellees, in their motion for summary judgment, argue that a letter
agreement dated September 12, 1995 between Price and the Womco Appellants operated as an accord
and satisfaction. There are no allegations of an accord and satisfaction operating as to the Hall
Appellants. Although the letter agreement does not specifically state that it is in satisfaction of the
previous obligation, Appellees contend that the circumstances of the transaction are indicative of an
accord and satisfaction. Specifically, Appellees argue that the following facts establish accord and
satisfaction as a matter of law: (1) Womco returned all thirty trucks and received fifty new trucks; (2)
Womco received $50,000.00, thirty days free interest on thirty of the new trucks, 100% financing on
all fifty new trucks, a 9.4% interest rate, and waiver of $11,000.00 in late charges. However,
Appellants point out that in Marquess's affidavit, which was part of Appellants' summary judgment
evidence, Marquess expressly denies that he, on behalf of Womco, ever agreed to release any claim
he had against Price or anyone else for the problems with Womco's trucks. (6) Thus, even assuming that
these circumstances are indicative of an accord and satisfaction, taking the evidence favorable to
Appellants as true, we conclude that there is a material issue of fact as to whether the letter agreement
dated September 12, 1995 was an accord and satisfaction. Appellants' seventh issue is sustained. 
Furthermore, Appellant's third issue, as it relates to paragraph of Marquess's affidavit, is sustained. (7)

 Accordingly, the trial court's order granting summary judgment is reversed as to Appellants'
claims for breach of warranty filed less than four years after the delivery of the truck upon which the
claim is based, and is remanded to the trial court for further proceedings. As to all other claims of
Appellants, the trial court's order granting summary judgment is affirmed.


 

 SAM GRIFFITH 

 Justice


Opinion delivered June 20, 2002.

Panel consisted of Worthen, J., and Griffith, J.































(PUBLISH)
1. Womco and Marquess are referred to collectively as the "Womco Appellants." C.L. Hall, Doris Hall, Lori
Claxton, Douglas Wayne Hall, NE-TEX AG Transportation Company, Inc. and Miller Grove Farm Supply, Inc. are
referred to collectively as the "Hall Appellants." The Womco Appellants and the Hall Appellants are referred to
collectively as "Appellants." Navistar and Price are referred to collectively as "Appellees."
2. In their fifth issue, Appellants also raise the issue of the deferred accrual exception based on fraudulent
concealment. Although our analysis above refers to the "discovery rule" in the traditional sense, it is equally
applicable to cases involving the deferred accrual exception. See La Gloria Oil and Gas Co., 12-00-00032-CV,
2001 WL 1654936 n 4 (Tex. App.-Tyler December 21, 2001), citing Rodessa Resources, Inc. v. Arcadia
Exploration and Production Co., 5 S.W.3d 363, 366 (Tex. App.-Texarkana 1999, no pet.); S.V., 933 S.W.2d at 6. 
3. The record reflects that three trucks owned by the Womco Appellants were delivered within four years of
their filing the instant lawsuit. The record further reflects that six trucks owned by the Hall Appellants were
delivered within four years of their filing suit. The statute of limitations for breach of implied warranty is four years. 
See Tex. Bus. & Comm. Code. Ann § 2.725(a) (Vernon 1994).
4. We recognize that there are certain exceptions to the aforementioned rules regarding disclaimers. 
However, these exceptions have not been raised on appeal and therefore, a review of these exceptions is not
necessary for the purposes of this opinion.
5. As it was not raised as a ground for summary judgment, in reaching our holding on this issue, we did not
consider whether the implied warranties at issue could have been properly excluded by prior course of dealing or
course of performance between the parties. See Tex. Bus. & Comm. Code Ann. § 2.316(c) (Vernon 1994).
6. We note that this paragraph of Marquess's affidavit, paragraph eleven, was one of the subjects of
Appellees' motion to strike, which is contested by Appellants' in their third issue on appeal. In their motion to
strike, Appellees state, "Defendants object to Paragraph 11 of W.O. Marquess' affidavit because it contains
unsubstantiated legal conclusions." Defects in the form of affidavits or attachments must be specifically pointed out
by objection by an opposing party. See Tex. R. Civ. P. 166a(f); Knetsch v. G.D. Gaitonde, M.D., 898 S.W.2d 386,
389 (Tex. App.-San Antonio 1995, no writ). A specific objection is one that enables the trial court to understand the
precise grounds so as to make an informed ruling and affords the offering party an opportunity to remedy the defect,
if possible. See In the Interest of N.C.M., 66 S.W.3d 417, 420 (Tex. App.-Tyler 2001, no pet.). In the instant case,
Appellees objection that paragraph 11 contains unsubstantiated legal conclusions is itself conclusory. Appellees do
not in their objection identify which statements in paragraph eleven are objectionable on such grounds, nor do they
offer any explanation to the trial court as to the precise bases for their objection. We conclude that Appellees'
objection to paragraph eleven of Marquess's affidavit in their motion to strike does not meet the criteria set forth by
Texas Rule of Civil Procedure 166a(f). 
7. As our consideration of issues five, six and seven is dispositive of all of Appellants' claims, we do not
reach Appellants' issues one, two, three, four and eight, other than a portion of issue three as discussed above. 
Moreover, even if the issues one through four related to Appellants' motion to strike had been sustained, our
determination of Appellants' issue five would not change as there was no dispute about the fact that the trucks began
overheating almost immediately after being put into service.